07-3950-cv (L)
Arch Insurance Company v. Precision Stone, Inc.

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2008

(Argued: December 19, 2008　　　　Decided: October 1, 2009)

Docket Nos. 07-3950-cv (L) & 07-4139-cv (XAP)

-------------------------------------

ARCH INSURANCE COMPANY, LUMBERMENS MUTUAL CASUALTY COMPANY,

Defendants-Appellants-Cross-Appellees,

- v. -

PRECISION STONE, INC.,

Plaintiff-Appellee-Cross-Appellant.[*]

-------------------------------------

Before:　　SACK and KATZMANN, Circuit Judges.[**]

Appeal from a judgment of the United States District Court for the Southern District of New York (Robert W. Sweet, Judge) in favor of the plaintiff, a stonework subcontractor, for $100,077.69 on a labor and materials payment bond issued by the defendants, which are bond sureties, in connection with a construction project in White Plains, New York.  The defendants argue on appeal that the district court erred in finding that the

---

[*]　The Clerk of Court is directed to amend the official caption as set forth above.

[**]　The Honorable Sonia Sotomayor, originally a member of the panel, was elevated to the Supreme Court on August 8, 2009. The two remaining members of the panel, who are in agreement, have determined the matter.  See 28 U.S.C. § 46(d); Local Rule 0.14(2); United States v. Desimone, 140 F.3d 457 (2d Cir. 1998).

plaintiff's action was timely under the terms of the bond. The plaintiff -- who completed some but not all of the work initially contemplated by the contract -- argues on cross-appeal that the district court improperly set off from the damages award the contractor's full cost to complete that portion of the contracted work that had not been completed by the plaintiff. We conclude that the district court did not err in finding that the action was timely under the terms of the bond, but that it was mistaken in setting off the plaintiff's award by the amount that it did.

Affirmed as to the appeal and reversed as to the cross-appeal; remanded for amendment of the judgment.

PATRICK M. REILLY, DelBello Donnellan Weingarten Wise & Wiederkehr, LLP, White Plains, NY, for Defendants-Appellants-Cross-Appellees.

PETER GOETZ (Susan M. Pascale, of counsel) Goetz Fitzpatrick LLP, New York, NY, for Plaintiff-Appellee-Cross-Appellant.

SACK, Circuit Judge:

Precision Stone Incorporated, a New York corporation, ("Precision") provided materials for and performed work on a construction project in White Plains, New York, pursuant to a subcontracting agreement with George A. Fuller Company and its construction manager HRH Construction LLC (together, "Fuller"). According to Precision, Fuller paid only a portion of the amount due to Precision for the work. Precision brought this action in an attempt to recover full payment for the work it performed from the defendants-appellants Arch Insurance Company and Lumbermens Mutual Casualty Company (together, the "Sureties"), two insurance

2

companies that had issued a labor and materials payment bond in connection with the project. Following a bench trial, the district court found that, under the terms of the bond, Precision had timely commenced its action and was entitled to damages. The court reduced Precision's award, however, by the full amount of payments made by Fuller to Berardi Stone ("Berardi"), a third-party subcontractor that had been engaged by Fuller to complete work that had been within the original scope of Precision's subcontract.

The Sureties appeal from the district court's decision that Precision's suit was timely. Precision cross-appeals from the district court's decision to offset Precision's damages by the full amount of payments made to Berardi, including those payments exceeding the outstanding balance of Precision's subcontract with Fuller. For the reasons set forth below, the judgment of the district court is affirmed in part and reversed in part, and we remand for the judgment to be amended.

**BACKGROUND[1]**

The Bond

In 2002, the City of White Plains granted Fuller a no-bid contract "to build a plaza and fountain at the corner of Main

---

[1] This discussion incorporates the findings of fact of the district court following trial as set forth in its opinion of February 1, 2007, see Precision Stone, Inc., v. Arch Ins. Co., 472 F. Supp. 2d 577 (S.D.N.Y. 2007), which "[w]e may not set aside . . . unless . . . clearly erroneous," Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc., 487 F.3d 89, 99 (2d Cir. 2007) (citing Fed. R. Civ. P. 52(a)). Because we conclude that none of the district court's findings of fact was clearly erroneous, we adopt them.

3

St. and Mamaroneck Avenue in White Plains." Payment Bond (Labor & Materials) No. SU1001063 for Contract No. 902334, Apr. 16, 2003 ("Payment Bond") at 1; see Complaint, Ex. A, Precision Stone, Inc. v. Arch Ins. Co., No. 04 Civ. 09996 (S.D.N.Y. Dec. 17, 2004) (Doc. No. 1) ("Compl."). Louis Cappelli, the owner of Fuller, represented to the City that "he wanted to substantially complete the construction of the [project] by the end of October 2003 (before Election Day)." Precision Stone, Inc. v. Arch Ins. Co. ("Precision Stone I"), 472 F. Supp. 2d 577, 578 (S.D.N.Y. 2007).

On April 16, 2003, the Sureties, neither a citizen of New York, and Fuller issued a payment bond "for the use and benefit of claimants supplying labor and/or materials for the work" on the project. Payment Bond 1. Pursuant to the bond, those who had provided labor or materials on the project and who had not been paid in full within ninety days after the completion of their work on the project were entitled to

> sue [the Sureties] and [Fuller] on this bond
> for such sum as may be justly due, provided,
> however, that no such suit or action shall be
> commenced hereunder by such claimant after
> the expiration of one (1) year following the
> date on which [Fuller] ceased work on said
> contract . . . .

Id. at 2.

Precision's Work

On May 8, 2003, at Fuller's request, Precision submitted a $536,665 bid to perform stone work for the project's fountains and plaza. Precision Stone I, 472 F. Supp. 2d at 578. Fuller issued a "Letter of Intent" for Precision to perform the

4

stone work for $515,000. Id. Precision executed the letter, but with various qualifications and conditions, including a condition that the agreed-upon price excluded costs associated with overtime work. Id. at 578-79. At the time the letter was issued, Precision had not been provided with a completion date, id. at 579, and it never bound itself to a "time-of-the-essence" provision, see id. at 580. On August 12, 2003, however, Precision agreed to complete its work by October 27, 2003, but only under specified conditions -- including that Fuller timely and properly prepare the work site and necessary substrates. Id. at 579-80.

The project was beset by problems and delays. The court found that Fuller had "created confusion on the job site and delayed Precision's start date for the stone installation." Id. at 580.[2] For example, a concrete subcontractor employed by Fuller improperly laid the concrete foundation for "ponds" -- water features associated with the project -- requiring demolition work to resize the foundations to their proper dimensions. Id. at 580. Despite Precision's warning that the ponds were not being built according to plan, Fuller allowed the concrete subcontractor to continue to lay their foundations improperly. Id.

---

[2] The court did not affirmatively state that Precision was not responsible for the delays, but it did not attribute any responsibility in the delays to Precision, either. See Precision Stone I, 472 F. Supp. 2d at 580.

5

As a result of these delays, it appears that Fuller was in jeopardy of failing to complete the project, as promised, by Election Day. In early October 2003, as Precision was in the course of performing work under the subcontract, Fuller engaged Berardi to perform a portion of that work. Id. Berardi, whose per-unit cost was higher than Precision's, see Precision Stone, Inc., v. Arch Ins. Co. ("Precision Stone II"), No. 04 Civ. 9996, 2007 WL 1975487, at *1, 2007 U.S. Dist. LEXIS 49274, at *2 (S.D.N.Y. July 6, 2007), worked overtime to complete the work by the end of October, Precision Stone I, 472 F. Supp. 2d at 580-81, i.e., before Election Day, as Capelli had initially promised the City of White Plains, id. at 578.

Precision's Lawsuit

Fuller ultimately refused to pay Precision for a portion of the work that Precision had completed. On December 17, 2004, therefore, Precision initiated this action for payment pursuant to the terms of the bond by filing a complaint in the United States District Court for the Southern District of New York asserting federal diversity jurisdiction. Compl. ¶ 4. The complaint, naming the Sureties as defendants, seeks the allegedly unpaid balance on that portion of the contract that Precision performed -- some $142,131.69 with pre-judgment interest and costs. Id. ¶ 12.

In its answer of January 13, 2005, the Sureties asserted, as affirmative defenses, that the complaint was untimely and that Precision had otherwise failed to comply with

6

the terms of the bond. Answer ¶¶ 8 & 9, <u>Precision Stone, Inc. v.</u> <u>Arch Ins. Co.</u>, No. 04 Civ. 09996 (S.D.N.Y. Jan. 25, 2005) (Doc. No. 6). The Sureties alleged "that Fuller ceased work on the contract for which the Bond was issued prior to October 27, 2003, which is also the date the plaza and fountain [were] opened to the public." <u>Id.</u> ¶ 9. Because Fuller allegedly "ceased work on the contract" more than one year prior to the filing of Precision's complaint, the Sureties asserted, the complaint was "barred by the bond limitations provision." <u>Id.</u>

Yet as of December 17, 2003, one year prior to the initiation of the complaint, "punch list" work had yet to be completed. <u>See</u> <u>Precision Stone I</u>, 472 F. Supp. 2d at 581. "Punch list" work, in the parlance of the construction industry, is "work called for by the original contract (or subcontract) which the contractor (or subcontractor) has not satisfactorily completed." <u>Aniero Concrete Co. v. New York City Constr. Auth.</u>, 308 F. Supp. 2d 164, 192 (S.D.N.Y. 2003); <u>accord</u> American Heritage Dictionary of Business Terms 420 (2009) (defining "punch list" to mean "[a]n inventory of things to do or that need to be corrected"); Oxford English Dictionary Online, http://dictionary.oed.com/cgi/entry/50192448/ 50192448se13?single=1&query_type=word&queryword=punch+list&first= 1&max_to_show=10&hilite=50192448se13 (last visited July 27, 2009) (defining "punch list" to mean "a list of items such as small repairs, unfinished work, etc., that must be completed in order to fulfil a construction contract, typically created at the end

7

of a project"). Revised punch lists were issued on January 9, 2004, and March 8, 2004.

### Trial before the District Court

The matter was tried before the district court (Robert W. Sweet, Judge) without a jury on September 19, 20, and 25, 2006. On September 25, at the close of Precision's case, the Sureties' counsel moved to dismiss Precision's complaint on the ground that "the evidence demonstrates that the work was substantially complete at least one year prior to the commencement of this action." Sept. 25 a.m. Tr. 119, Precision Stone, Inc. v. Arch Ins. Co., No. 04 Civ. 09996 (S.D.N.Y. Oct. 17, 2006) (Doc. No. 22) ("Sept. 25 a.m. Tr."). In opposing that motion, Precision's counsel argued that the "substantial completion" language was not contained in the bond, which referred only to when Fuller "ceased work on said project. That's the language, ceased work." Id. at 120; see also Payment Bond 2 (noting that an action pursuant to the bond is untimely if commenced "after the expiration of one (1) year following the date on which [Fuller] ceased work" on the project).

By oral decision dated September 25, 2006, the district court denied the Sureties' motion. In the court's view, "the punch list was part of the original contract" and thus "[t]he punch list is a completion of the contract." Sept. 25 p.m. Tr. 4, Precision Stone, Inc. v. Arch Ins. Co., No. 04 Civ. 09996 (S.D.N.Y. Oct. 17, 2006) (Doc. No. 24) ("Sep. 25 p.m. Tr."). On this basis, the court denied the Sureties' motion to dismiss

8

because "there was work performed under the contract on the punch list" within one year of Precision filing suit, id. at 5, thereby requiring the Sureties to proceed with their defense.

Following the close of the Sureties' case and as set forth in the district court's written opinion, the court reiterated that "[t]he punch list established that as of March 2004, Fuller was still performing physical work on the Project and had consequently not ceased work." Precision Stone I, 472 F. Supp. 2d at 581. Based in part on this finding, the district court concluded that Precision was entitled to payment under the bond. See id. at 581-82.

Specifically, the district court concluded that Precision was entitled to payment "in the amount it expended [in labor and material in connection with the project for which it had yet to be paid], less the credit resulting from the substitution of Berardi with respect to the installation of the pavers." Id. at 582. This "credit" resulted in the district court calculating Precision's damages to be approximately $40,000 less than Precision sought, due to Fuller's "payments to . . . Berardi . . . for its overtime expenses in laying paving stones, and the one dollar per square foot price difference between Precision's quote and the amount paid to Berardi for laying the stones." Precision Stone II, 2007 WL 1975487, at *1, 2007 U.S. Dist. LEXIS 49274, at *2. In other words, this additional amount (the "Additional Berardi Payment") constitutes that portion of the payment to Berardi that exceeded the payment

9

Fuller would have made to Precision had Precision completed the remainder of the subcontracted work for the initial per-square-footage price without any overtime payments. Ultimately, the district court granted judgment to Precision in the total amount of $100,077.69, without prejudgment interest. Precision Stone I, 472 F. Supp. 2d at 582.[3]

### Precision's Motion to Amend

By pleadings filed pursuant to Rule 52(b) of the Federal Rules of Civil Procedure, Precision requested that the district court amend its findings of facts and conclusions of law in two respects -- arguing that the district court had "inadvertent[ly]" reduced its damages by the amount of the Additional Berardi Payment, Precision Stone II, 2007 WL 1975487, at *1, 2007 U.S. Dist. LEXIS 49274, at *2, and that the court "erred in failing to award pre-judgment interest on the amount due," id. at *1, 2007 U.S. Dist. LEXIS 49274, at *3. By opinion and order dated July 6, 2007, the district court declined to alter its damages calculation, but granted Precision's request for pre-judgment interest. Id. at *1-*2, 2007 U.S. Dist. LEXIS 49274, at *2-*4.

---

[3] The district court calculated Precision's total damages by adding the "[b]ase [c]ontract [p]rice," $515,000, to the costs associated with various change orders, including additional air freight, $50,000, Saturday delivery of certain materials, $1,500, overtime, $37,292.19, shop drawings, $4,000, paver installation, $3,648, and then deducting $334,758.50, the payment that Precision had already received, and $176,604, a "[p]aver [c]redit" for payment to Berardi "including overtime," i.e., the payment to Berardi to complete that portion of the contract not performed by Precision. Precision Stone I, 472 F. Supp. 2d at 581.

This appeal followed.

**DISCUSSION**

I. Standard of Review and Choice of Law

"We review the district court's findings of fact after a bench trial for clear error and its conclusions of law de novo." Amalfitano v. Rosenberg, 533 F.3d 117, 123 (2d Cir. 2008). Subject matter jurisdiction in this case is based on diversity of citizenship under 28 U.S.C. § 1332. "The parties' briefs assume that New York substantive law governs the issues . . . presented here, and such implied consent is, of course, sufficient to establish the applicable choice of law." Golden Pac. Bancorp v. FDIC, 273 F.3d 509, 514 n.4 (2d Cir. 2001) (citing Krumme v. WestPoint Stevens Inc., 238 F.3d 133, 138 (2d Cir. 2000)). We therefore apply New York law.

II. Timeliness Under The Bond

The Sureties argue that Precision's action is untimely under the bond's limitations provision because Fuller "ceased work" on the construction contract prior to December 17, 2003. But the district court found as a fact that Fuller had not ceased work as of that date. We see no clear error in this finding. "In reviewing findings for clear error, we are not allowed to second-guess . . . the trial court's . . . choice between permissible competing inferences," Amalfitano, 533 F.3d at 123 (internal quotation marks omitted), because in that case, "the factfinder's choice . . . cannot be clearly erroneous," Anderson v. City of Bessemer, 470 U.S. 564, 574 (1985).

11

The record contains not only the punch-lists themselves, which were introduced into evidence, see Sep. 19 Tr. 59, Precision Stone, Inc. v. Arch Ins. Co., No. 04 Civ. 09996 (S.D.N.Y. Oct. 17, 2006) (Doc. No. 23) ("Sep. 19 Tr."); Sep. 20 Tr. 13-15, Precision Stone, Inc. v. Arch Ins. Co., No. 04 Civ. 09996 (S.D.N.Y. Oct. 17, 2006) (Doc. No. 21) ("Sep. 20 Tr."), but also testimony regarding the contents of those lists. This evidence provided adequate support for the district court's determination. For example, one punch list noted that as of January 9, 2004, less than a year prior to the initiation of this action, various railings, grates, and lights had not yet been fully installed and some stonework and asphalt had not yet been properly laid. A former Fuller employee, primarily responsible for completing the punch list, Sep. 20 Tr. at 15, testified that, as distinguished from remedial work, which "is usually something that's gone wrong and you have to fix it," id. at 16, the punch lists demonstrated that, at the time of their issuance, certain contracted-for work "was not done," id. at 17; see also id. at 66 (testifying that work on the punch lists had been contracted for). In light of that evidence, the Sureties' insistence that the punch-list work consisted of "remedial" work that was "insufficient" to "toll [the] limitations period," see Sureties Br. 9-10, does not establish clear error.

As the Sureties concede, they are "bound by the conditions and limitations in the bond." Id. at 9 (citing, inter alia, Timberline Elec. Supply Corp. v. Ins. Co. of N. Am., 421

12

N.Y.S.2d 987, 72 A.D.2d 905 (4th Dep't 1979)).[4]  The bond states that an action is timely so long as it is filed within one year of "the date on which [Fuller] ceased work on [the construction] contract," Payment Bond 2.  Because the Sureties establish no clear error in the district court's finding that "as of March 2004, Fuller was still performing physical work on the Project and had consequently not ceased work," Precision Stone I, 472 F. Supp. 2d at 581, we therefore affirm the judgment of the district court to the extent the Sureties appeal from it.

III.  Damages

Precision asserts that the district court improperly accounted for the Additional Berardi Payment in calculating damages.  We agree.

"Although the amount of recoverable damages is a question of fact, the measure of damages upon which the factual computation is based is a question of law."  Wolff & Munier, Inc. v. Whiting-Turner Contracting Co., 946 F.2d 1003, 1009 (2d Cir. 1991) (internal quotation marks omitted).  "[W]hether the

---

[4]  In New York, a bond is a contract and we therefore "look to standard principles of contract interpretation to determine the rights and obligations of a surety under a bond." U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co., 369 F.3d 34, 51 (2d Cir. 2004); accord EM Ltd. v. Republic of Argentina, 382 F.3d 291, 292 (2d Cir. 2004) (noting that a dispute over the meaning of a bond "present[s] . . . a simple question of contract interpretation"); First Nat'l Bank of Waterloo v. Story, 163 A.D. 279, 282, 148 N.Y.S. 886, 887 (4th Dep't 1914) ("[S]urety bonds, like all contracts, are to be fairly construed so as to effectuate the intent of the parties as it has been expressed in the terms of the contract."), aff'd, 222 N.Y. 562, 118 N.E. 1058; Gillies v. Nat'l Fire Ins. Co. of Hartford, 56 A.D.3d 1236, 1237, 867 N.Y.S.2d 295, 296 (4th Dep't 2008).  While the New York Legislature has adopted laws relating to public improvement bonds, see, e.g., N.Y. State Fin. Law § 137, no party asserts that the provisions of any such law apply to the instant dispute.

13

district court correctly calculated damages is [thus] a question of law that we review de novo." Oscar Gruss & Son, Inc. v. Hollander, 337 F.3d 186, 196 (2d Cir. 2003) (internal quotation marks omitted).

"It is fundamental to the [New York] law of damages that one complaining of injury has the burden of proving the extent of the harm suffered," Berley Indus., Inc. v. City of New York, 45 N.Y.2d 683, 686, 385 N.E.2d 281, 282, 412 N.Y.S.2d 589, 591 (1978), and that a party opposing a damages award may submit evidence rebutting the claimant's case, see, e.g., Trademark Research Corp. v. Maxwell Online, Inc., 995 F.2d 326, 332 (2d Cir. 1993); Trans World Metals, Inc. v. Southwire Co., 769 F.2d 902, 910-11 (2d Cir. 1985).

The payment bond provides for damages that are "justly due." Payment Bond 2. When a contractor defaults or breaches an agreement with a subcontractor, that subcontractor ordinarily is entitled to "collect either in quantum meruit for what had been finished, or in contract for the value of what plaintiff had lost -- that is, the contract price, less payments made and less the cost of completion." New Era Homes Corp. v. Forster, 299 N.Y. 303, 307, 86 N.E.2d 757, 759 (1949) (citation omitted).

The court set forth the damages calculations but did not explain the theory underlying them. In its computations, the court took as the starting point the "base contract price," see Precision Stone I, 472 F. Supp. 2d at 581, suggesting that it considered Precision's recovery to be based on the contract. The court did not, however, award Precision full contract damages.

14

And it noted that Precision was entitled to payment "in the amount it expended [in labor and material in connection with the project for which it had yet to be paid], less [certain deductions]," id. at 582, suggesting that it considered Precision's recovery to be based in quantum meruit on the value of Precision's completed work. Thus, the district court's theory of damages is not entirely clear. It is clear, however, that, either on a contract or quantum meruit theory of recovery, accounting for the Additional Berardi Payment was mistaken.

In a typical breach of contract case, a non-breaching party is entitled to the payment it is due under the terms of the contract, less the payment it has already received and the cost to it to perform the remainder of the contract. See United States ex rel. N. Maltese & Sons, Inc. v. Juno Constr. Corp., 759 F.2d 253, 255 (2d Cir. 1985) (applying New York law).[5] The Sureties identify this principle, but ask us to misapply it: They contend that deductible "payments" include those made by the party in breach -- Fuller -- to complete the work contemplated by the contract, including, in this case, Fuller's payments to Berardi. Sureties Reply Br. 15, 20, 22. But the rule refers only to "payments" received by the non-breaching party; only then

---

[5] At least one New York court has held that "lost profits," generally recoverable under a breached contract, "are generally not recoverable under a labor and materials payment bond." QDR Consultants & Dev. Corp. v. Colonia Ins. Co., 675 N.Y.S.2d 117, 119, 251 A.D.2d 641, 643 (2d Dep't 1998). But Precision did not seek lost profits before the district court or on appeal; it sought only full payment on that portion of the contract that it had completed. Therefore, we need not, and do not purport to, conclude that such payment bonds entitle a party to all damages to which it may be entitled on a breach-of-contract theory of recovery.

15

will that party be placed in the position it would have been had the other party fully performed under the terms of the contract. In the absence of a default by Precision, the amount paid by Fuller to Berardi to complete the job is irrelevant.

In quantum meruit, any payment from Fuller to Berardi, including the Additional Berardi Payment, is similarly not relevant. Recovery on that theory is intended to compensate a party for the fair value of the work that it has already performed for which it has not been paid, or the "actual job cost plus [an] allowance for . . . overhead and profit minus the amounts thus far paid for the work performed by [the non-breaching party]." Whitmyer Bros., Inc. v. New York, 47 N.Y.2d 960, 962, 393 N.E.2d 1027, 1028, 419 N.Y.S.2d 954, 955 (1979). Any payment from Fuller to Berardi, including the Additional Berardi Payment, has no bearing on Fuller's failure to compensate Precision in full for the work that Precision had already completed for the benefit of Fuller.

For these reasons, the Additional Berardi Payment should not have been taken into account in assessing Precision's damages.

IV. Setoff

This is not to say that under no circumstances could the Additional Berardi Payment have been taken into account in measuring Precision's ultimate award. Had there been some wrong on Precision's part, the Sureties might have been entitled to set off the Additional Berardi Payment from those amounts due to

16

Precision under the bond. But Precision argues that the Sureties cannot do so here, and we agree.

The district court found Fuller, not Precision, to be responsible for the project's delays. Precision Stone I, 472 F. Supp. 2d at 579-80. On this record, there is no basis on which we can conclude that the court's finding was clearly erroneous and no reason for Precision to be forced to bear the cost -- i.e., the Additional Berardi Payment -- associated with Fuller's decision to complete the project in time for Election Day by employing Berardi.

Precision contends, moreover, that to the extent the Sureties failed to raise any claim relating to the Additional Berardi Payment in their pleadings, they have abandoned any right to setoff that they might have had. Precision Br. 30. Precision claims that a "setoff to a contract is an affirmative defense that is waived by failure to plead." Id.; see Fed. R. Civ. P. 8(c) ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense . . . .").[6] The Sureties insist that a setoff is not an affirmative defense, but a "counterdemand." Sureties Reply Br. 19; accord Black's Law Dictionary 1496 (9th ed. 2009) (defining a setoff as a

[6] Courts have indeed characterized claims for setoff as affirmative defenses. See, e.g., SCS Commc'ns, Inc. v. Herrick Co., Inc., 360 F.3d 329, 345 (2d Cir. 2004); In re Trans World Airlines, Inc., 322 F.3d 283, 289 (3d Cir. 2003); Gunnells v. Healthplan Servs., Inc., 348 F.3d 417, 438 (4th Cir. 2003), cert. denied, 542 U.S. 915 (2004); S. La. Cement, Inc. v. Van Aalst Bulk Handling, B.V., 383 F.3d 297, 299 (5th Cir. 2004); Giles v. Gen. Elec. Co., 245 F.3d 474, 494 n.36 (5th Cir. 2001); IES Indus., Inc. v. United States, 349 F.3d 574, 576 (8th Cir. 2003); Am. First Fed., Inc. v. Lake Forest Park, Inc., 198 F.3d 1259, 1262 (11th Cir. 1999).

"counterdemand against the plaintiff, arising out of a transaction independent of the plaintiff's claim").[7]

We need not, however, resolve this issue. As noted, assuming that the Sureties properly preserved the issue, they would not be entitled to a setoff against Precision because it was not a defaulting party. And, irrespective of whether a setoff claim is properly characterized as an affirmative defense, see Fed. R. Civ. P. 8(c), or a compulsory or permissive counterclaim, see Fed. R. Civ. P. 13, it must be set forth in the pleadings to provide a basis for relief, see Valley Disposal Inc. v. Cent. Vt. Solid Waste Mgmt. Dist., 113 F.3d 357, 364 (2d Cir. 1997) ("[T]he provision for '[p]ermissive' counterclaims in [Fed. R. Civ. P. 13(b)] does not mean that the defendant who chooses not to assert such a claim in his answer is permitted to assert it at his whim later in the litigation or as a postjudgment remedy of self-help."); accord Empresa Cubana del Tabaco v. Culbro Corp., 541 F.3d 476, 479 (2d Cir. 2008) (noting that an issue was not properly before the district court where defendant

---

[7] Support for this proposition can also be found in a recent opinion by this Circuit, where we stated that "[a] setoff does not destroy the plaintiff's right of action" but "embodies a counterdemand based on some transaction entirely extrinsic to the plaintiff's cause of action." Fin. One Pub. Co. Ltd. v. Lehman Bros. Special Fin., Inc., 414 F.3d 325, 336 (2d Cir. 2005) (internal quotation marks omitted), cert. denied, 548 U.S. 904 (2006). A setoff "constitutes a defense only in the practical sense that it operates to reduce the remedy -- rather than the debt." Id. (internal quotation marks omitted). Therefore, it is "not an affirmative defense," but is more "properly characterized as a permissive counterclaim." Id. (internal quotation marks omitted); see also Valley Disposal Inc. v. Cent. Vt. Solid Waste Mgmt. Dist., 113 F.3d 357, 364 (2d Cir. 1997) ("Under the Federal Rules of Civil Procedure, a defendant's claim of setoff against a plaintiff is to be made by means of counterclaim in its answer to the complaint.").

failed to raise the issue as a counterclaim).[8]  Here, the Sureties never affirmatively pleaded any defense or counterclaim ("counterdemand") in their answer or other pleading on which a claim for setoff of the Additional Berardi Payment could be based.  For these reasons, any such claim has been abandoned, at least for purposes of this action.

V.  Calculations

The Sureties contest Precision's position that the district court improperly accounted for the Additional Berardi Payment.  They do not, however, challenge Precision's calculation of the amount of that payment -- $33,184 in overtime and $8,700 constituting the $1-per-square-foot price difference between Precision's contract and the amount paid to Berardi for laying the remaining 8,700 square feet within the scope of Fuller's original agreement with Precision.  Having concluded that the district court erred in reducing Precision's award by this amount

---

[8]  New York's procedural law appears to be similar.  See Kivort Steel, Inc. v. Liberty Leather Corp., 487 N.Y.S.2d 877, 878, 110 A.D.2d 950, 952 (3d Dep't 1985) ("Whether setoff is an affirmative defense or is more akin to a counterclaim, the facts in support thereof must be pleaded in the answer.  Defendant's failure to do so constitutes a waiver." (citations and footnote omitted)); Ellenville Nat'l Bank v. Freund, 606 N.Y.S.2d 415, 416, 200 A.D.2d 827, 828 (3d Dep't 1994) (noting that because the answer did not contain even "conclusory allegations that [the defendants] intended to assert such a defense or counterclaim, let alone any facts in support thereof," the "claimed entitlement to a setoff, whether considered an affirmative defense or a counterclaim," was waived).

-- $41,884[9] -- we reverse the judgment in part with instructions to the district court to amend the judgment accordingly.

**CONCLUSION**

For the foregoing reasons, the district court's judgment is affirmed in part and reversed in part, and the cause remanded to the district court for amendment of the judgment in accordance with this opinion.

---

[9] Precision claims that the district court erred in reducing its award by $42,554. See Precision Br. 28. But it only identifies an erroneous debit of $8,700, constituting the sum of the additional $1-per-square-foot payments to Berardi, and of $33,184, constituting overtime payments to Berardi. Adding the two together, we arrive at $41,884.