Garry, J.
Appeal from an order of the Supreme Court (Crowell, J.), entered August 22, 2014 in Saratoga County, which partially granted plaintiffs motion for summary judgment.
Defendant Mark J. Polsinello, a dentist, is the sole shareholder of defendant Richard F. Esmay, D.D.S. and Mark J. Polsinello, D.M.D., P.C., a New York corporation. Plaintiff, also a dentist, was formerly a coequal shareholder with Polsinello in the corporation. While plaintiff was a shareholder, he and Polsinello were participants in the corporation’s deferred compensation plan (hereinafter plan), a written agreement that had been in effect since 1980. The plan provides, among other things, that the corporation’s accountant will annually determine the amount of deferred compensation owed to each participant for the previous year based on procedures set forth in the plan, and the resulting amounts will be allocated to the participants’ accounts.
In December 2010, plaintiff sold his interest in the corporation to Polsinello pursuant to a stock purchase agreement (hereinafter agreement) that provides, among other things, that funds owed to plaintiff as deferred compensation would be paid to him as set forth in the plan. The plan, in turn, provides that when a participant stops working full time for the corpora *1402 tion, the balance of the participant’s deferred compensation account will be calculated by the corporation’s accountant and will be paid to the participant in 36 monthly installments. When plaintiff left the corporation, the accountant was unable to calculate the balance of his account because of limitations in the accounting software. However, plaintiff and Polsinello agreed on the amount of plaintiffs balance in a sum of approximately $60,000. The corporation then deducted approximately $10,000 from the agreed-upon amount, representing plaintiffs proportionate share of the corporation’s unpaid 2010 expenses, and began remitting monthly payments to plaintiff based upon the adjusted sum. Plaintiff demanded full payment of the agreed-upon balance, but defendants continued to remit the adjusted payments, asserting that the deduction was consistent with the corporation’s longstanding accounting practices.
In April 2011, plaintiff commenced this action alleging that defendants breached the agreement and demanding payment of the alleged arrears resulting from the deduction, as well as legal expenses and counsel fees pursuant to the agreement. Plaintiff moved for summary judgment and, in January 2012, Supreme Court (Sise, J.) denied the motion on the ground that “the matter [was] not ripe for summary judgment” because of issues of fact as to the amount of plaintiffs deferred compensation account balance. In 2014, shortly before a scheduled evidentiary hearing, plaintiff again moved for summary judgment, offering what he contended was proof of the amount of his plan balance as of the time that he left the corporation. In August 2014, Supreme Court (Crowell, J.) partially granted this second motion for summary judgment in plaintiffs favor on the issue of defendants’ liability for breach of contract, holding that the 2012 order required such a ruling, as it was “the law of the case.” The court directed a trial on the remaining issue of damages. Defendants appeal from the 2014 order.
Initially, we reject plaintiffs contention that Supreme Court was required to rule that defendants were liable for breaching the agreement by the doctrine of the law of the case, which bars courts from reconsidering “pre-judgment rulings made by courts of coordinate jurisdiction” in the same case (People v Evans, 94 NY2d 499, 503 [2000]; accord Gadani v DeBrino Caulking Assoc., Inc., 86 AD3d 689, 691 [2011]). The doctrine applies only when the prior ruling directly passed upon a question of law that is essential to the determination of the matter (see Scofield v Trustees of Union Coll., 288 AD2d 807, 808 [2001]; Brown v State of New York, 250 AD2d 314, 320 [1998]). Here, *1403 the only determination made in the 2012 order was that material issues of fact existed as to the amount owed. Although additional remarks were made in that order, these were merely dicta, and did not constitute a legal determination as to whether defendants breached the agreement by deducting expenses — an issue that was not directly addressed by the 2012 order (see Matter of McNamee, Lochner, Titus & Williams [Killeen], 267 AD2d 919, 922 [1999]; compare Papa Gino’s of Am. v Plaza at Latham Assoc., 144 AD2d 172, 172 [1988]). Nevertheless, although the doctrine of law of the case does not compel a determination that defendants are liable for a breach, upon review we find that plaintiff was entitled to partial summary judgment on the merits of this issue and, thus, the motion was correctly decided.
Defendants contend that the deduction of expenses from plaintiffs payments did not constitute a breach of contract, as the plain language of the plan contemplates the corporation’s longstanding practice of making such deductions from deferred compensation allocations. Plaintiff does not specifically deny that the corporation previously followed this practice; indeed, the record includes a January 2011 email to a corporate representative in which plaintiff appeared to acknowledge that he expected that the deductions would be made. However, we agree with plaintiff that the plain language of the agreement requires defendants to make the payments according to the terms set forth in the plan, and the plain language of the plan makes no provision for such a deduction. It is a “familiar and eminently sensible proposition of law that, when parties set down their agreement in a clear, complete document, their writing should be enforced according to its terms” (Vermont Teddy Bear Co. v 538 Madison Realty Co., 1 NY3d 470, 475 [2004] [internal quotation marks, brackets, ellipsis and citation omitted]). Unless a contract is ambiguous, a court must look to the plain language of the instrument itself to give effect to the parties’ intentions (see Schron v Troutman Sanders LLP, 20 NY3d 430, 436 [2013]; Williams v Village of Endicott, 91 AD3d 1160, 1161-1162 [2012]).
Here, the Plan requires the corporation’s accountant to calculate the “[t]otal [d]eferred [c]ompensation” for the time period in question and to allocate that amount to the participant’s account. Total deferred compensation is defined in the plan as “the total collectible [a]ccounts [Receivable properly accrued by the corporation . . . which are . . . attributable to services rendered to patients of the [corporation by the [participant],” as well as a percentage of the accounts receivable attributable *1404 to services performed by corporation employees who are not participants. Contrary to defendants’ argument, this language cannot be read to include the deduction of corporate expenses. An account receivable is defined as “[a]n account reflecting a balance owed by a debtor; a debt owed by a customer to an enterprise for goods or services” (Black’s Law Dictionary 18 [8th ed 2004]). The word “attributable” is defined as “caused by a particular event, situation, activity, or person” (Macmillan Online Dictionary, attributable [http://www.macmillandictionary.com/ us/dictionary/american/attributable] [accessed Mar. 12, 2015]). Thus, total deferred compensation, as defined in the plan, means the aggregate of balances due from patients to whom a participant rendered services, as well as a percentage of the balances due resulting from services rendered by nonparticipating employees. Nothing in this language suggests an intention to include any part of the corporation’s business expenditures. As nothing else in the plan provides for the deduction of expenses from allocations, and the agreement specifically provides that deferred compensation funds are to be allocated to plaintiff as set forth in the plan, the deduction of expenses from plaintiffs allocation did not comport with the agreement.
Defendants submitted ample evidence demonstrating that the corporation’s past practice has been to deduct annual expenses from allocations, and they argue for a “practical construction” of the plan language that takes this practice into account. However, extrinsic evidence may be considered “only where reasonable minds could differ as to what was intended by the parties, and provisions in a contract are not ambiguous merely because the parties interpret them differently” (Zinter Handling, Inc. v General Elec. Co., 101 AD3d 1333, 1335 [2012] [internal quotation marks and citation omitted]). Only when a contract is ambiguous can the interpretation placed upon it by the parties, as shown by their conduct, be considered in determining their intent, and even then, the parties’ practices are “merely an interpretive tool and cannot be used to create a contractual right independent of some express source in the underlying agreement” (Matter of Aeneas McDonald Police Benevolent Assn. v City of Geneva, 92 NY2d 326, 333 [1998]; see Continental Cas. Co. v Rapid-American Corp., 80 NY2d 640, 651 [1993]; Slatt v Slatt, 64 NY2d 966, 967 [1985]; Estate of Hatch v NYCO Mins., 245 AD2d 746, 749 [1997]). Here, defendants do not claim that there is any ambiguity in the pertinent provisions of the two contracts, and we find none upon our review of the controlling language. Accordingly, the parties’ customary practice with regard to deferred compensa *1405 tion allocations constitutes inadmissible parol evidence (see Wechsler v New York State Dept. of Envtl. Conservation, 193 AD2d 856, 859 [1993], lv denied 82 NY2d 656 [1993]; State Univ. Constr. Fund v Aetna Cas. & Sur. Co., 189 AD2d 929, 931-932 [1993]), and plaintiff was thus entitled to partial summary judgment on the issue of defendants’ liability for breach of the agreement.
Peters, P.J., Rose and Lynch, JJ., concur.
Ordered that the order is affirmed, with costs.