Piccirilli v Yonaty (2022 NY Slip Op 02841)

Piccirilli v Yonaty

2022 NY Slip Op 02841

Decided on April 28, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:April 28, 2022

532673
[*1]Luciano Piccirilli, Appellant,
v
Mark Yonaty et al., Respondents.

Calendar Date:February 17, 2022

Before:Garry, P.J., Lynch, Pritzker, Colangelo and McShan, JJ.

Coughlin & Gerhart, LLP, Binghamton (Alan J. Pope of counsel), for appellant.
Hinman, Howard & Kattell, LLP, Binghamton (Daniel R. Norton of counsel), for respondents.

Colangelo, J.
Appeal from an order of the Supreme Court (Cerio Jr., J.), entered December 4, 2020 in Broome County, which, among other things, granted defendants' motion for summary judgment dismissing the complaint.
In November 2011, defendant Mark Yonaty agreed to purchase plaintiff's 50% interest in defendant Greater Binghamton Development LLC (hereinafter GBD) for $300,000 (hereinafter the purchase agreement). At that time, Yonaty owned the other 50% interest in GBD. Despite Yonaty's purchase of plaintiff's interest, the purchase agreement provided, with respect to certain items listed in exhibit C therein, that the parties would continue to share in the benefits and liabilities of each such matter until each was resolved. One of the matters related to a then-pending litigation between Amcat Global, Inc.[FN1] and GBD. With respect to that matter, the parties agreed to place $952,457.81 in escrow, and the purchase agreement so reflects. Eventually, Amcat prevailed in the litigation and obtained a judgment against GBD in the amount of $1,293,044.24. GBD then released to Amcat the money that it was holding in escrow, leaving a residual balance from GBD to Amcat of $337,323.21, plus interest. Nonetheless, thereafter GBD proceeded to make payments to plaintiff, not to Amcat, in four separate checks totaling $168,961.69. Amcat then commenced a second litigation against plaintiff, Yonaty, defendant Greater Binghamton Development II, LLC and GBD seeking such payments. Supreme Court found that the payments violated the Debtor and Creditor Law and issued a judgment against plaintiff for $261,065.21, representing the base amount of $168,961.69 plus interest. Thereafter, this second Amcat litigation was settled by a $225,000 payment to Amcat from plaintiff and Yonaty.
Plaintiff then commenced this action contending, in essence, that, under the purchase agreement, his exposure to Amcat was limited to the amount initially placed in escrow — namely, $952,457.81 — and any additional payments to Amcat were Yonaty's sole responsibility. Plaintiff therefore claimed that he was entitled to the return of the four checks totaling $168,961.69 previously paid to him by GBD, plus interest. After discovery, plaintiff moved for partial summary judgment on his breach of contract claim, and defendants moved for summary judgment dismissing the complaint. Supreme Court denied plaintiff's motion and granted defendants' motion, finding that the purchase agreement did not support plaintiff's right to such payments. Plaintiff appeals, and we affirm.
In our view, the plain terms of the purchase agreement require dismissal of the complaint. This appeal boils down to the interpretation and application of, in essence, two contractual provisions and whether they are ambiguous as far as the Amcat matter is concerned. "The fundamental, neutral precept of contract interpretation is that agreements are to be construed in accord with the parties' intent, and the best evidence of what [*2]parties to a written agreement intend is what they say in their writing" (Catlyn & Derzee, Inc. v Amedore Land Developers, LLC, 132 AD3d 1202, 1204 [2015] [internal quotation marks, brackets and citations omitted]). As this Court has stated, "[i]t is a familiar and eminently sensible proposition of law that, when parties set down their agreement in a clear, complete document, their writing should be enforced according to its terms. Unless a contract is ambiguous, a court must look to the plain language of the instrument itself to give effect to the parties' intentions" (Karol v Polsinello, 127 AD3d 1401, 1403 [2015] [internal quotation marks and citations omitted]; see Bailey v Fish & Neave, 8 NY3d 523, 528 [2007]; MLB Constr. Services, LLC v Dormitory Auth., 194 AD3d 1140, 1143 [2021], lv dismissed 37 NY3d 1046 [2021]). Moreover, "[s]uch agreements should be read as a whole to ensure that undue emphasis is not placed upon particular words and phrases" (Bailey v Fish & Neave, 8 NY3d at 828; see Consedine v Portville Cent. School Dist., 12 NY3d 286, 288 [2009]).
Applying these axiomatic principles, two provisions of the purchase agreement, when read in tandem, are clear and unambiguous as far as the continuing obligations of the parties with respect to the Amcat matter are concerned. Section 1.5 of the purchase agreement provides that, "despite [plaintiff's] sale of the [GBD] [i]nterest to [Yonaty] . . ., [plaintiff] and [Yonaty] shall equally share in the benefits (including awards, verdicts, settlements and the like) and liabilities (including costs, expenses, judgments and the like) relating to certain matters which are outstanding as of the [e]ffective [d]ate, as more particularly set forth on Exhibit C hereto, as may be amended (individually and collectively, the "Pending Matters"). To this end, . . . [plaintiff] and [Yonaty] agree to fully and timely cooperate to prosecute and defend the Pending Matters as though each of [them] maintained an equal ownership in [GBD]." One of the Pending Matters listed in Exhibit C is the Amcat matter as to which the parties placed over $952,000 "in escrow." When this entry on Exhibit C is read in the context of section 1.5, its meaning and import is clear — that there is a Pending Matter with respect to Amcat, and money has been placed in escrow with respect to it. There is no indication that the liability of either party is limited to the amount held in escrow.
Plaintiff's principal contention is that the mere use of the term escrow somewhat implies such a limitation; in other words, that the exposure of the parties with respect to Amcat is limited to the amount described as being in escrow. Plaintiff cites no authority for this proposition, and for good reason. When Exhibit C is read together with section 1.5, it is clear that no such limitation was intended; rather, section 1.5 creates, with respect to all of the items listed in Exhibit C, an open-ended exposure of each party to future losses[*3], as well as the sharing of future potential gains.[FN2] When read in this proper context, and considering that the purchase agreement is "read as a whole to ensure that undue emphasis is not placed upon particular words and phrases" (Bailey v Fish & Neave, 8 NY3d at 528), the term escrow clearly describes the amount to be held, not a limitation or potential liability. As Supreme Court recognized, there is nothing in the purchase agreement that limits either party's exposure to the amount held in escrow, and, had the parties so intended, they could have said so.[FN3] Indeed, if the term escrow had been intended to limit liability, it would render both section 1.5 and section 1.6 of the purchase agreement superfluous — a result to be avoided and frowned upon by the law (see Nautilus Insurance Co. v Matthew David Events, Ltd., 69 AD3d 457, 460 [2010]). "It is a well settled principle of contract law that a court should not adopt a construction of a contract which will operate to leave a provision of a contract without force and effect. An interpretation that gives effect to all the terms of an agreement is preferable to one that ignores terms or accords them an unreasonable interpretation" (id. [internal quotation marks, ellipses and citations omitted]). As the purchase agreement did not limit plaintiff's exposure with respect to the Amcat litigation to the money placed in escrow, and unambiguously continued to bind the parties equally to the benefits and liabilities of the litigation, we find that defendants' motion was appropriately granted and the complaint dismissed (see Voss v Netherlands Ins. Co., 22 NY3d 726, 734 [2014]; Cromer v Rosenzweig Insurance Agency, Inc., 156 AD3d 1192, 1193 [2017]).
We have reviewed plaintiff's remaining contentions and find them to be without merit.
Lynch, Pritzker and McShan, JJ., concur.
Garry, P.J. (dissenting).
The majority correctly states that "[t]his appeal boils down to the interpretation and application of, in essence, two contractual provisions and whether they are ambiguous." The majority then concludes that the provisions in the written agreement between plaintiff and defendant Mark Yonaty regarding the sale of plaintiff's interest in defendant Greater Binghamton Development LLC (hereinafter GBD) are unambiguous. However, upon review, I find that the agreement is ambiguous; therefore, summary judgment should have been denied, as the meaning of the disputed provisions requires a factual determination.
"Unless a contract is ambiguous, a court must look to the plain language of the instrument itself to give effect to the parties' intentions" (Karol v Polsinello, 127 AD3d 1401, 1403 [2015] [citations omitted]). "Whether a contract is ambiguous is a question of law and extrinsic evidence may not be considered unless the document itself is ambiguous" (Bailey v Fish & Neave, 8 NY3d 523, 528 [2007] [internal quotation marks and citations omitted]; see Donohue v Cuomo, 38 NY3d 1, 13 [2022]; Schron v Troutman [*4]Sanders LLP, 20 NY3d 430, 436 [2013]). Ambiguity arises wherever a reasonable difference of opinion may exist regarding the meaning of the relevant contract provisions, i.e., "when specific language is susceptible of two reasonable interpretations" (Ellington v EMI Music, Inc., 24 NY3d 239, 244 [2014] [internal quotation marks and citation omitted]; accord Donohue v Cuomo, 38 NY3d at 13; see Matter of John U.[Sara U.], 195 AD3d 1280, 1281 [2021]). "[A]greements should be read as a whole to ensure that undue emphasis is not placed upon particular words and phrases. Moreover, courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing" (Bailey v Fish & Neave, 8 NY3d at 528 [internal quotation marks and citations omitted]). On this summary judgment motion, we should look at only the language of the agreement to determine whether it is ambiguous.
Section 1.5 of the agreement provides that, despite plaintiff's sale of his interest in GBD to Yonaty, plaintiff and Yonaty "shall equally share in the benefits (including awards, verdicts, settlements and the like) and liabilities (including costs, expenses, judgments and the like) relating to certain matters which are outstanding as of the [e]ffective [d]ate, as more particularly set forth on Exhibit C hereto, as may be amended (individually and collectively, the "Pending Matters"). To this end, . . . [plaintiff] and [Yonaty] agree to fully and timely cooperate to prosecute and defend the Pending Matters as though each of [them] maintained an equal ownership in [GBD]. This cooperation includes the commitment of all time, experience, expertise, monies and other resources necessary to bring the Pending Matters to resolution and finality as may be mutually agreeable to [plaintiff] and [Yonaty]."
Despite correctly stating that we must read the agreement as a whole (see id.), the majority recites only a few words from Exhibit C — the words addressing Amcat Global, Inc. — and integrates them with section 1.5. In reading the agreement as a whole, we must consider and compare all the items listed in Exhibit C: "open lawsuit with midtown mall," "open issue with Broome County DA," "[o]pen issue with Kevin Guyette," "[o]pen issue with Blue Wireless," "[o]pen issue with NYSEG," "open issue with outstanding taxes or expenses to current date before execution of agreement," "[o]pen sale with Unison," "Amcat/ GBD,LLC $952,000.00 +- in escrow," "Servpro outcome" and "[a]ny monies due from any tenants fit up or any other agreements we had with them that may still be in effect."
This review clearly demonstrates that the parties used different terms to address different Pending Matters. One was referred to as an open lawsuit, while others were referred to as open issues or open sales or by other terms. Exhibit C, when addressing any potential problems or issues between Amcat and GBD, does not [*5]say that the Pending Matters include "Amcat/GBD litigation" or "open lawsuit with Amcat."[FN4] Such phrasing would have been consistent with the words used to describe the only other Pending Matter that was in active litigation.[FN5] Instead, Exhibit C mentions Amcat and then says "$952,000.00 +- in escrow." One possible reading of that item is that this Pending Matter relates to litigation between Amcat and GBD concerning the listed approximate amount placed in an escrow account [FN6] that Amcat claims is owed to it, and that plaintiff and Yonaty are equally responsible for the full amount of any liabilities resulting therefrom. However, another possible reading is that this Pending Matter is limited to the amount in that escrow account and any benefits at the time of its disbursement, regardless of the outcome of any litigation with Amcat.[FN7] Notably, this is the only item in Exhibit C that contains a dollar amount, which could support this second reading. Because this language is susceptible to at least two reasonable interpretations, the agreement is ambiguous (see Ellington v EMI Music, Inc., 24 NY3d at 244; Matter of John U. v Sara U., 195 AD3d at 1283; Vectron Intl., Inc. v Corning Oak Holding, Inc., 106 AD3d 1164, 1167 [2013]).[FN8] Therefore, a factual question exists as to the parties' intent regarding the meaning of that Pending Matter, rendering it improper to grant summary judgment to any party. Accordingly, Supreme Court's order should be modified to deny defendants' motion for summary judgment on plaintiff's second cause of action.
ORDERED that the order is affirmed, with costs.

Footnotes

Footnote 1: Amcat is a construction company that was retained by GBD to remediate water damage sustained as a result of a fire within a building owned by GBD. Amcat sued for moneys allegedly owed for its work.

Footnote 2: Section 1.6 confirms this reading of section 1.5 and Exhibit C to share benefits and burdens of the matters listed on Exhibit C by providing for the converse; that is, as section 1.6 states, except with respect to the Pending Matters, "all benefits and liabilities relating to [GBD] and its operations first arising from and after the [e]ffective [d]ate . . . shall be wholly the benefits and liabilities of [Yonaty]."

Footnote 3: To the extent that the Amcat entry on Exhibit C may be deemed ambiguous, such ambiguity must be resolved against the party that drafted it — plaintiff (see Finch v Haynes, 104 AD3d 1113, 1114 [2013]).

Footnote 4: The first paragraph of the majority's decision states that the relevant Pending Matter "related to a then-pending litigation between" Amcat and GBD. This phrasing, from the outset, accepts the characterization of that Pending Matter asserted by defendants, rather than using the language of the agreement or phrasing it in neutral terms. It then follows that the majority appears to have added the word "litigation" into the Amcat item in Exhibit C. However, this is contrary to the admonition that courts may not rewrite a contract or add to its terms (see Bailey v Fish & Neave, 8 NY3d at 528).

Footnote 5: Defendants' counsel conceded at oral argument that, as of the effective date of the agreement, the "open lawsuit with midtown mall" was the only other pending litigation involving GBD, aside from the Amcat litigation.

Footnote 6: The actual amount placed in escrow was $952,457.81.

Footnote 7: Defendants argue that the words "prosecute and defend" and the words explaining benefits and liabilities in section 1.5 are language common to litigation, thereby implying that the Pending Matters in Exhibit C are litigation matters. That argument is belied by some of the items contained in Exhibit C. For example, an open sale, an issue with outstanding taxes and monies due from tenants are matters that would not necessarily be involved in litigation.

Footnote 8: The majority recites facts that could be used to interpret or discern the parties' intent when executing the agreement, as well as a canon of contract interpretation stating that ambiguity must be resolved against the drafter. But if, as the majority concludes, the agreement is unambiguous, then neither extrinsic evidence nor canons of contract interpretation are necessary or relevant.