BCC Hous. Dev. Corp. v LPCiminelli, Inc. (2025 NY Slip Op 01143)

BCC Hous. Dev. Corp. v LPCiminelli, Inc.

2025 NY Slip Op 01143

Decided on February 27, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:February 27, 2025

CV-23-2162
[*1]BCC Housing Development Corporation, Respondent,
v
LPCiminelli, Inc., et al., Appellants. (And a Third-Party Action.)

Calendar Date:January 6, 2025

Before:Garry, P.J., Pritzker, Ceresia, Powers and Mackey, JJ.

Zdarsky, Sawicki & Agostinelli LLP, Buffalo (Guy J. Agostinelli of counsel), for appellants.
Hinman, Howard & Kattell, LLP, Albany (Paul C. Marthy of counsel), for respondent.

Powers, J.
Appeal from an order of the Supreme Court (Oliver Blaise III, J.), entered October 12, 2023 in Broome County, which denied defendants' motion for partial summary judgment.
In 2013, plaintiff contracted with defendant LPCiminelli, Inc. for the construction of new student housing on the campus of SUNY Broome Community College. As required under the contract, LPCiminelli executed a performance bond with defendant Liberty Mutual Insurance Company, thereby making defendants jointly and severally liable for the performance of the contract. In addition to other time restrictions, the performance bond mandated that any action or proceeding thereunder was required to be commenced within two years after work ceased. Construction was substantially completed in August 2014, and the building was used to house students starting in the 2014-2015 academic year. Final payment was then made under the contract in June 2015. However, several defects in construction were discovered, and LPCiminelli began corrective work to remedy these defects, which continued until September 2017. In November 2017, based upon LPCiminelli's cessation of this corrective work before all defects were remedied, plaintiff sent defendants default notification letters, as was required under the contract. However, the parties were unable to come to any type of agreement as to the continuation of corrective work. Thus, in August 2019, plaintiff commenced this action based in breach of warranty and breach of contract and, markedly, seeking to hold Liberty Mutual jointly and severely liable under the terms of the performance bond. Defendants answered, asserting, among other things, a statute of limitations affirmative defense. Defendants then moved for partial summary judgment dismissing the claims arising from the performance bond on the ground that the instant action was not commenced within two years of cessation of work, as required under that bond. Supreme Court denied defendants' motion, finding the action to have been timely commenced, and defendants appeal.
It is well settled that interpretation of contract provisions is a question of law for the court (see 87 Uptown Rd., LLC v Country Mut. Ins. Co., 225 AD3d 1016, 1017 [3d Dept 2024]; American Food & Vending Corp. v Amazon.com, Inc., 214 AD3d 1153, 1155 [3d Dept 2023]). "A contract that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms" (Cobleskill Stone Prods., Inc. v Merchants Natl. Bonding, Inc., 223 AD3d 1021, 1023 [3d Dept 2024] [internal quotation marks and citations omitted]; accord Zollo v Adirondack Lodges Homeowners Assn., Inc., 225 AD3d 973, 975 [3d Dept 2024]). "In determining whether a contract is ambiguous, the court should examine the entire contract and consider the relation of the parties and the circumstances under which it was executed. Particular words should be considered, not as if isolated from the context, but in the light of the obligation as a whole and [*2]the intention of the parties as manifested thereby" (Hogan v Bullock, 233 AD3d 1321, 1324 [3d Dept 2024] [internal quotation marks and citations omitted]). Stated another way, "such agreements should be read as a whole to ensure that undue emphasis is not placed upon particular words and phrases" (Piccirilli v Yonaty, 204 AD3d 1322, 1323 [3d Dept 2022] [internal quotation marks, brackets and citation omitted]). Pursuant to CPLR 201, "[p]arties to a contract may agree to limit the period of time within which an action must be commenced to a period shorter than that provided by the applicable statute of limitations" (J Constr. Co., LLC v Westchester Fire Ins. Co., 165 AD3d 1076, 1078 [2d Dept 2018]).
As the construction contract at issue is a collection of documents that includes not only the performance bond executed between LPCiminelli and Liberty Mutual, a nuanced overview of the relevant portions of these documents is necessary. Initially, the prime contract specified the scope of work and, among other things, that final payment "shall be made . . . no later than 30 days after" full performance of the contract. However, LPCiminelli had the "responsibility to correct non-conforming Work discovered after final payment." Appended as exhibit A to the prime contract is a document entitled "Terms and Conditions." Significantly, this document defines the term "Work" as "the design, construction and services required by the Design-Build Documents, whether completed or partially completed, and includes all other labor, materials, equipment and services provided or to be provided by the Design-Builder to fulfill the Design-Builder's obligations." Further, "Substantial Completion" is defined as "the stage in the progress of the Work when the Work or designated portion thereof is sufficiently complete in accordance with the Design-Build Documents so that the Owner can occupy or use the Work or a portion thereof for its intended use." Still, LPCiminelli was under the continuing obligation to "promptly correct Work rejected by [plaintiff] or failing to conform to the requirements of the Design-Build Documents, whether discovered before or after Substantial Completion." If any work was discovered to not be in accordance with the contract after substantial completion, LPCiminelli was required to "correct it promptly after receipt of written notice," so long as such nonconformity was discovered within a year of substantial competition. As a term of the contract, LPCiminelli was required to "furnish bonds covering faithful performance of the Contract and payment of obligations arising thereunder." Thus, LPCiminelli did so by executing a performance bond with Liberty Mutual as surety. This performance bond outlines that "[a]ny proceeding, legal or equitable, under this Bond . . . shall be instituted within two years after a declaration [of] Contractor Default or within two years after the Contractor ceased working or within two years after the Surety refuses or fails [*3]to perform its obligations under this Bond, whichever occurs first." Thus, if the contractor ceased work more than two years prior to commencement of the action on August 27, 2019, that aspect of this action seeking to hold Liberty Mutual jointly and severely liable was untimely.
"Performance bonds are governed by the usual rules of construction of adhesion contracts, and contractual time limitations contained therein are to be strictly construed against the surety" (City of Yonkers v 58A JVD Indus., Ltd., 115 AD3d 635, 636 [2d Dept 2014] [internal quotation marks and citations omitted]). As such, the issue here distills to when work ceased under the terms of the contract and, consequently, whether LPCiminelli's corrective work constituted continued work pursuant thereto. While "[t]he phrase 'ceased work' should be given its plain and ordinary meaning, i.e., 'stopped performing labor' " (J & A Concrete Corp. v St. Paul Mercury Ins. Co., 48 AD3d 334, 334 [1st Dept 2008], quoting Sea Crest Constr. Corp. v Amwest Sur. Ins. Co., 263 AD2d 433, 434 [1st Dept 1999]), it is also important that the term work is specifically defined by the contract as including all labor required to fulfill LPCiminelli's obligations. Under the terms of the contract, LPCiminelli was required to "promptly correct" deficient work whether discovered before or after substantial completion so long as such defects were discovered during the warranty period. Thus, it is manifest that the terms of the contract placed a continuing obligation on LPCiminelli to perform corrective work, which it had done until September 2017. As such, substantial completion was not synonymous with cessation of work nor was the fact that final payment had become due indicative of the same.
Considering this broad definition of work in the contract documents — which are viewed, not in isolation, but together in totality — we agree with Supreme Court's conclusion that work under the contract continued when LPCiminelli began to remedy the defects in construction. This corrective work was required under the contract between plaintiff and LPCiminelli and, therefore, it cannot be seen as merely incidental to the construction of the building or an inconsequential repair (compare Cabrini Med. Ctr. v Desina, 64 NY2d 1059, 1061 [1985]; City of Glens Falls v Crandell Assoc. Architects, 170 AD2d 866, 868 [3d Dept 1991]). Moreover, by LPCiminelli beginning and then terminating the corrective work, plaintiff was "lulled . . . into sleeping on its rights under the performance bond" (Carle Place Union Free School Dist. v Bat-Jac Constr., Inc., 28 AD3d 596, 598 [2d Dept 2006] [internal quotation marks and citation omitted]). Therefore, LPCiminelli ceased work in September 2017 — when it failed to continue the corrective work it was performing and obligated to complete under the contract — thus commencing the limitations period (see American Bldg. Contrs. Assoc., Inc. v Mica & Wood Creations, LLC, 23 AD3d 322, 323 [2d Dept [*4]2005]; see also Johnson City Cent. School Dist. v Fidelity & Deposit Co. of Md., 226 AD2d 990, 993 [3d Dept 1996]; Menorah Nursing Home v Zukov, 153 AD2d 13, 21 [2d Dept 1989]; Arch Ins. Co. v Precision Stone, Inc., 584 F3d 33, 39-40 [2d Cir 2009]; cf. J. Cerasaro, Inc. v Village of Unadilla, 82 AD2d 934, 935 [3d Dept 1981]; but see Inner City Drywall Corp. v Reliance Ins. Co. of N.Y., 263 AD2d 438, 439 [1st Dept 1999]). Accordingly, that aspect of the action asserting plaintiff's rights under the performance bond is timely, and Supreme Court properly denied defendants' motion for partial summary judgment seeking dismissal of this claim (compare Sea Crest Constr. Corp. v Amwest Sur. Ins. Co., 263 AD2d 433, 434 [1st Dept 1999]; Whitacre Constr. Specialties v Aetna Cas. & Sur. Co., 86 AD2d 972, 972 [4th Dept 1982], affd 57 NY2d 1018 [1982]; Timberline Elec. Supply Corp. v Insurance Co. of N. Am., 72 AD2d 905, 906-907 [4th Dept 1979], affd 52 NY2d 793 [1980]; cf. Town of Esopus v Brinnier & Larios, 135 AD2d 935, 936 [3d Dept 1987]).
Garry, P.J., Pritzker, Ceresia and Mackey, JJ., concur.
ORDERED that the order is affirmed, with costs.