Cobleskill Stone Prods., Inc. v Merchants Natl. Bonding, Inc. (2024 NY Slip Op 00109)

Cobleskill Stone Prods., Inc. v Merchants Natl. Bonding, Inc.

2024 NY Slip Op 00109

Decided on January 11, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:January 11, 2024

CV-22-2007
[*1]Cobleskill Stone Products, Inc., Respondent,
v
Merchants National Bonding, Inc., et al., Appellants.

Calendar Date:November 13, 2023

Before:Lynch, J.P., Clark, Ceresia, Fisher and Mackey, JJ.

Sheats & Bailey, PLLC, Liverpool (Jason B. Bailey of counsel), for appellants.
Wilson Elser Moskowitz Edelman & Dicker LLP, Albany (Christopher A. Priore of counsel), for respondent.

Fisher, J.
Appeal from an order of the Supreme Court (James H. Ferreira, J.), entered October 3, 2022 in Schoharie County, which granted plaintiff's motion for summary judgment.
In May 2018, defendant JBS Dirt, Inc. entered into a prime contract to construct a taxiway for a municipal airport located in the Village of Sidney, Delaware County. As surety for JBS, defendant Merchants National Bonding, Inc. (hereinafter Merchants) issued a payment bond for the project. In June 2019, JBS subcontracted with plaintiff to provide labor, materials, certain equipment and trucking related to paving work for the project. The subcontract was subject to the terms and conditions listed in "Exhibit A," which was a quote issued by plaintiff in June 2017. Such quote indicated, among other things, that pricing was based on prevailing wage rates, noted the current index at the time of the quote as being $420.00/US ton and that an "[a]sphalt [p]rice [a]djustment will be based on the [New York State Office of General Services] formula." In September 2019, following the completion of its portion of the project, plaintiff submitted an application for payment to JBS in the amount of $600,603.93 based on the price indexes from when the work had been completed in July 2019 ($582.00/US ton) and August 2019 ($578.00/US ton) — both of which were greater than the asphalt index in the quote from June 2017.
After initially requesting a small price decrease, JBS ultimately rejected plaintiff's revised application for payment incorporating that decrease, on the grounds that it included a price escalation clause which, pursuant to the prime contract, was not permitted on projects though the Federal Aviation Administration (hereinafter FAA). After the second revised application for payment was rejected by JBS and there was a denial of a proof of claim by Merchants, plaintiff commenced this action alleging, as relevant here, breach of contract against both defendants and breach of the payment bond by Merchants. Following joinder of issue and the completion of discovery, plaintiff moved for summary judgment on these claims, which was opposed by defendants on the grounds that plaintiff's request for payment included an impermissible price escalation and that plaintiff had otherwise not satisfactorily performed under the subcontract. Supreme Court granted plaintiff's motion, determining that the subcontract was unambiguous that the price would be based on the current index at the time of the paving work, ultimately rejecting defendants' contentions and entering a judgment against each of them in favor of plaintiff. Defendants appeal.
We affirm. In order to prevail, "a cause of action for breach of contract requires that the plaintiff show the existence of a contract, the performance of its obligations under the contract, the failure of the defendant to perform its obligations and damages resulting from the defendant's breach" (Ampower-US, LLC v WEG Transformers USA, LLC, 214 AD3d 1129, 1131 [3d Dept [*2]2023] [internal quotation marks, brackets and citations omitted]). A contract "that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms" (EDW Drywall Constr., LLC v U.W. Marx, Inc., 189 AD3d 1720, 1722 [3d Dept 2020] [internal quotation marks and citations omitted]). As relevant here, "incorporation clauses in a construction subcontract, incorporating prime contract clauses by reference into a subcontract, bind a subcontractor only as to prime contract provisions relating to the scope, quality, character and manner of the work to be performed by the subcontractor" (Matter of Alliance Masonry Corp. [Corning Hosp.], 178 AD3d 1346, 1348 [3d Dept 2019] [internal quotation marks and citations omitted], lvs denied 36 NY3d 901 [2020], 36 NY3d 901 [2020]; see McCarthy Concrete, Inc. v Banton Constr. Co., 203 AD3d 1496, 1502 n 4 [3d Dept 2022], lv denied 38 NY3d 913 [2022]). As further relevant, the State Finance Law requires the posting of "a bond guaranteeing prompt payment of moneys due to all persons furnishing labor or materials to the contractor or any subcontractors in the prosecution of the work provided for in" a public improvement contract (State Finance Law § 137 [1]), "and permits such persons to sue on the bond if they are not paid in full for such materials" (Erie Materials, Inc. v Universal Group of N.Y., Inc., 101 AD3d 1529, 1530 [3d Dept 2012], citing State Finance Law § 137 [3]).
Here, the subcontract was unambiguous as it clearly stated that it was subject to the terms and conditions of the quote from June 2017, which provided that there would be an asphalt price adjustment based on a state agency's formula and corresponding price index (see Piccirilli v Yonaty, 204 AD3d 1322, 1323-1325 [3d Dept 2022]; see also Vertical Computer Sys., Inc. v Ross Sys., Inc., 59 AD3d 205, 205 [1st Dept 2009]). Plaintiff's vice president averred that it was industry practice to adjust the material unit pricing as of the date the material was placed, which is what plaintiff had done by following the relevant formula and indexes, and therefore the application and revised applications for payment were accurately calculated. Further, plaintiff's chief financial officer, secretary and treasurer stated that the paving work was completed in a manner that satisfied the required specifications for the project and to receive payment. This is corroborated by the documentary evidence that reveals, although JBS denied plaintiff's payment applications in September 2019, JBS had simultaneously submitted a voucher for payment of the paving work completed by plaintiff to the Village, certifying that the work was performed under the terms of the contract and in conformity with the approved plans and specifications. Based on this, JBS ultimately received a payment from the Village in the amount of $580,576.26 for the approved paving work. Given that JBS and Merchants failed to either approve plaintiff's applications for [*3]payment or otherwise remit payment to plaintiff for its performance under the subcontract, we are satisfied that plaintiff had met its burden of establishing a prima facie entitlement to summary judgment as a matter of law against each defendant (see Digesare Mech., Inc. v U.W. Marx, Inc., 176 AD3d 1449, 1453 [3d Dept 2019]; Erie Materials, Inc. v Universal Group of N.Y., Inc., 101 AD3d at 1530).
The burden shifted to the nonmovants to raise a triable issue of fact through the submission of competent evidence (see White Knight Constr. Contrs., LLC v Haugh, 216 AD3d 1345, 1347 [3d Dept 2023]). In opposition, the affidavit of JBS's president contended that plaintiff did not adequately perform under the subcontract because it failed to meet certain specifications related to the paving, rendering such work defective. This claim is echoed by Merchants' claims attorney, who relies on the observations and claims of JBS to support Merchants' position. However, as Supreme Court properly found, these contentions are conclusory and contradicted by the record — notably JBS's certification to the Village that plaintiff's paving was in compliance with the contract and in conformity with the approved plans and specifications — and is therefore insufficient to raise a question of fact (see Hill v Country Club Acres, Inc., 134 AD3d 1267, 1268 [3d Dept 2015]; Conolly v Thuillez, 26 AD3d 720, 722 [3d Dept 2006]). To the extent that defendants offered emails requesting plaintiff to make certain repairs or fixes to defects in the paving work, there are no allegations in the record that such remediation was not made and, nevertheless, the Village had approved the paving work.
Defendants also contend that the subcontract expressly incorporated certain documents, such as the FAA handbook, which preclude price escalation clauses and, at a minimum, would render the subcontract ambiguous. However, the subcontract expressly stated what documents were included in the agreement between plaintiff and JBS, but did not list the FAA handbook as one of those documents. To the further extent that the subcontract also provided that "[plaintiff] binds [itself] to [JBS] for the performance of [plaintiff's] work in the same manner as [JBS] is bound to [the Village] for such performance under [JBS's] contract with [the Village]," such provision will "bind a subcontractor only as to prime contract provisions relating to the scope, quality, character and manner of the work to be performed by the subcontractor" (Matter of Alliance Masonry Corp. [Corning Hosp.], 178 AD3d at 1348 [internal quotation marks and citations omitted]). Since none of these factors apply, considering the foregoing in a light most favorable to defendants, they have failed to raise a question of fact and, accordingly, Supreme Court correctly granted plaintiff's motion for summary judgment (see White Knight Constr. Contr., LLC v Haugh, 216 AD3d at 1348; Digesare Mech., Inc. v U.W. Marx, Inc., 176 AD3d at 1455; Erie Materials[*4], Inc. v Universal Group of N.Y., Inc., 101 AD3d at 1531). We have examined the parties' remaining contentions and have found them to be without merit or rendered academic.
Lynch, J.P., Clark, Ceresia and Mackey, JJ., concur.
ORDERED that the order is affirmed, with costs.