Town of Colonie v Global Contr. & Painting, Inc. (2025 NY Slip Op 01986)

Town of Colonie v Global Contr. & Painting, Inc.

2025 NY Slip Op 01986

Decided on April 3, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:April 3, 2025

CV-23-2154
[*1]Town of Colonie et al., Appellants-Respondents,
v
Global Contracting & Painting, Inc., et al., Respondents-Appellants, et al., Defendants.

Calendar Date:February 13, 2025

Before:Egan Jr., J.P., Clark, Lynch, Powers and Mackey, JJ.

Bailey, Johnson & Peck PC, Albany (Crystal R. Peck of counsel), for appellants-respondents.
Rupp Pfalzgraf LLC, Buffalo (John T. Kolaga of counsel), for respondents-appellants.

Mackey, J.
Cross-appeals from an order of the Supreme Court (David Weinstein, J.), entered October 19, 2023 in Albany County, which (1) partially granted a motion by defendants Global Contracting & Painting, Inc. and Larry Fotevski for summary judgment, and (2) partially granted plaintiffs' cross-motion for summary judgment.
This contract dispute arises in connection with the rehabilitation of the Newtonville 1.0 Million Gallon standpipe in the Town of Colonie, Albany County, and the discovery of hazardous waste removed from its interior.[FN1] Defendant Global Contracting & Painting, Inc. won a bid for plaintiffs' project involving various restoration tasks related to the standpipe, including "sandblasting, lead based paint abatement and painting of the interior and exterior of the standpipe." Defendant C.T. Male Associates Engineering served as the project manager, a role that included the preparation of the bid and contract documents on behalf of plaintiffs. The terms of the contract entered into by Global and plaintiffs provided, in relevant part, when Global could be held responsible for the removal or remediation of a hazardous environmental condition at the project site.
After Global had blasted and finished repainting the interior of the standpipe, paint chip samples previously removed from the interior tested positive for hazardous levels of polychlorinated biphenyls (hereinafter PCBs). Global then notified plaintiffs of the testing results and took various actions, including stopping the transfer of the hazardous waste to a landfill and returning it to the worksite and confining its contaminated equipment. Thereafter, C.T. Male contacted Global and directed that the waste be secured as a qualifying hazardous material, asserting that the disposal of the paint chip waste and any necessary environmental site remediation was Global's responsibility. Global disagreed and replied that the PCB-laden chip waste from the interior of the standpipe was an unanticipated hazardous environmental condition that was not expressly identified in the contract as being within the scope of the work and, thus, plaintiffs were responsible for remediation. Upon this basis, Global ceased work on the project.
Plaintiffs thereafter commenced this action against Global and its president, Larry Fotevski, alleging breach of contract, among other claims, asserting that Global failed to properly address the hazardous waste discovered as required under the contract and to timely complete the project when it ceased work. Global answered and asserted, as is relevant here, a counterclaim for breach of contract based upon plaintiffs' alleged failure to accurately disclose the concentrations of PCBs present at the worksite and to thereafter issue change orders in accordance with the hazardous conditions discovered. Plaintiffs and Global subsequently cross-moved for summary judgment on their respective breach of contract claims.
Supreme Court partially granted Global's summary judgment motion[*2], finding that the PCBs discovered within the interior of the standpipe were an undisclosed hazardous environmental condition. As a result, the court found that Global was not obligated to remediate the hazard and that plaintiffs were obligated to indemnify Global for costs associated with the contamination. The court also partially granted plaintiffs' cross-motion, finding that Global's right to indemnification was subject to certain limitations under the contract absent a showing "of reckless, willful or bad faith conduct." The remainder of the summary judgment motions were denied. These cross-appeals ensued.
In seeking summary judgment, "a movant is only entitled to judgment as a matter of law where the record evidence reflects that there remain no material issues of fact" (Matter of McNeil, 233 AD3d 1231, 1233 [3d Dept 2024]; see Davis v Marshall & Sterling, Inc., 217 AD3d 1073, 1074 [3d Dept 2023], appeal dismissed 40 NY3d 1084 [2024]). To prevail on a cause of action for breach of contract, a party must demonstrate "the existence of a contract, the performance of its obligations under the contract, the failure of the [opposing party] to perform its obligations and damages resulting from [that] breach" (Cobleskill Stone Prods., Inc. v Merchants Natl. Bonding, Inc., 223 AD3d 1021, 1023 [3d Dept 2024] [internal quotation marks and citations omitted]). "The determination as to whether a contract is ambiguous and the interpretation of an unambiguous agreement are questions of law for the court to resolve" (Zollo v Adirondack Lodges Homeowners Assn., Inc., 225 AD3d 973, 975 [3d Dept 2024] [citations omitted]), and "[a] contract that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms" (Cobleskill Stone Prods., Inc. v Merchants Natl. Bonding, Inc., 223 AD3d at 1023 [internal quotation marks and citations omitted]).
Initially, we agree with Supreme Court that the terms of the contract concerning hazardous conditions present at the project site are unambiguous. As relevant here, the contract required Global to "abate lead-based paint . . . and PCB containing paint on all of the exterior surfaces" of the standpipe and ancillary equipment, and to comply with federal regulations "during the removal of the coating system (paint) on the exterior of the [standpipe]." Further references regarding acceptable removal and abatement methods and requirements, again, solely concerned the standpipe's "exterior." Global would not be held responsible "for removing or remediating any Hazardous Environmental Condition encountered, uncovered, or revealed at the [s]ite unless such removal or remediation is expressly identified in the [c]ontract [d]ocuments to be within the scope of the [w]ork." To this end, the parties' agreement provided that Global was permitted to "rely upon the accuracy of the [t]echnical [d]ata expressly identified" by plaintiffs regarding the presence of environmental hazards.
Global's submissions [*3]on summary judgment reflect that the technical data and information provided by plaintiffs identified low levels of lead-based paint and PCBs on the exterior of the standpipe and in the soil at the project site, without reference to the standpipe's interior. A "Health & Safety Plan" created for the project in August 2017 similarly noted the presence of lead and PCBs on the exterior of the standpipe. Bid documents also indicated that the standpipe had last been repainted in 1991. Affording the terms of the contract "their plain and ordinary meaning" (O'Toole v Marist Coll., 206 AD3d 1106, 1008 [3d Dept 2022] [internal quotation marks and citations omitted]; see Davis v Zeh, 200 AD3d 1275, 1278 [3d Dept 2021]), we find that Global met its initial burden on summary judgment on this issue, as its submissions indicate that the presence of PCBs in the interior of the standpipe was not "expressly identified" in the information provided by plaintiffs. In opposition, plaintiffs did not contradict Global's submissions but provided the affidavit of John Frazer, superintendent of the Latham Water District. Frazier's affidavit, conceding that samples had not been taken from the interior of the standpipe for testing prior to commencement of the project but asserting that it was nevertheless "not a reasonable assumption" that the interior was free from PCBs, was insufficient to raise a triable issue of fact. Accordingly, Supreme Court properly granted partial summary judgment in favor of Global, finding that the PCBs in the standpipe's interior were an undisclosed hazardous environmental condition for which Global was not responsible and plaintiffs were subject to indemnification (see Cobleskill Stone Prods., Inc. v Merchants Natl. Bonding, Inc., 223 AD3d at 1023-1025; White Knight Constr. Contrs., LLC v Haugh, 216 AD3d 1345, 1348 [3d Dept 2023]).
Turning to the issue of indemnification, where, as here, "a contract employs contradictory language, specific provisions control over general provisions" (Matter of McKay v Village of Endicott, 161 AD3d 1340, 1343 [3d Dept 2018] [internal quotation marks and citations omitted], lv denied 32 NY3d 913 [2019]). "Contractual indemnification provisions are strictly construed to avoid reading into the provision a duty which the parties did not intend to be assumed" (Burhmaster v CRM Rental Mgt., Inc., 166 AD3d 1130, 1134 [3d Dept 2018] [internal quotation marks, brackets and citations omitted]; see Torres v Accumanage, LLC, 210 AD3d 718, 720 [2d Dept 2022]), and are "generally enforceable unless the party seeking to avoid liability has engaged in grossly negligent conduct evincing a 'reckless disregard for the rights of others' " (Pacnet Network Ltd. v KDDI Corp., 78 AD3d 478, 480 [1st Dept 2010], quoting Colnaghi, U.S.A. v Jewelers Protection Servs., 81 NY2d 821, 823-824 [1993]).
The contract here provides that, "[t]o the fullest extent permitted by [l]aws and [r]egulations, [plaintiffs] shall indemnify and hold harmless [[*4]Global] . . . against all claims, costs, losses, and damages (including but not limited to all fees and charges of engineers, architects, attorneys, and other professionals and all court or arbitration of other dispute resolution costs) arising out of or relating to a [h]azardous [e]nvironmental [c]ondition." A separate provision, however, limits damages by expressly exempting plaintiffs from liability for any "claims, costs, losses, or damages sustained by [Global] on or in conjunction with any other project or anticipated project." In reconciling these contradictory contractual provisions, we find that Supreme Court correctly found the more specific limitations provision to be controlling (see Restatement [First] of Contracts § 236 [c]; Muzak Corp. v Hotel Taft Corp., 1 NY2d 42, 46 [1956]; McKay v Village of Endicott, 161 AD3d at 1343). As a consequence, the court astutely recognized that Global's right to indemnification for damages related to the hazardous environmental condition, i.e., the PCBs from the interior of the standpipe, did not extend to "potential losses it might face during its work on any and all other projects on which it was engaged" (emphasis added). The court thus properly granted partial summary judgment in plaintiffs' favor to this extent (see generally Burhmaster v CRM Rental Mgt., Inc., 166 AD3d at 1134-1135). Despite Global's contention that plaintiffs acted with reckless indifference to the rights of others so as to render the limitation on liability clause unenforceable, questions of material fact remain precluding summary judgment as to this issue (see Colnaghi, U.S.A. v Jewelers Protection Servs., 81 NY2d at 823-824; Soja v Keystone Trozze, LLC, 106 AD3d 1168, 1170 [3d Dept 2013]).
Egan Jr., J.P., Clark, Lynch and Powers, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: A standpipe is "a high vertical pipe or reservoir that is used to secure a uniform pressure in a water-supply system" (Merriam-Webster.com Dictionary, standpipe [https://www.merriam-webster.com/dictionary/standpipe]). In layman's terms, a standpipe is essentially a form of water tower.