Turner v Quinones (2025 NY Slip Op 06766)

Turner v Quinones

2025 NY Slip Op 06766

Decided on December 4, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 4, 2025

CV-24-0633
[*1]Cockia Turner, Appellant,
v
Melvin Quinones, Defendant, and Quality Building & Maintenance LLC, Respondent.

Calendar Date:October 16, 2025

Before:Aarons, J.P., Reynolds Fitzgerald, Ceresia, Fisher and McShan, JJ.

Cockia Turner, Bloomingburg, appellant pro se.
Joseph J. Haspel PLLC, Middletown (Joseph J. Haspel of counsel), for respondent.

Reynolds Fitzgerald, J.
Appeal from a judgment of the Supreme Court (Stephan Schick, J.), entered March 12, 2024 in Sullivan County, upon a decision of the court partially in favor of defendant Quality Building & Maintenance LLC.
Plaintiff purchased a house in Sullivan County which had been in foreclosure and was uninhabitable. In order to facilitate the purchase, plaintiff obtained an FHA 203(k) loan. Such loans combine the cost of purchase of, and renovations to, a property. As such, they require that the rehabilitation of the property is overseen by a certified US Department of Housing and Urban Development (hereinafter HUD) consultant who is assigned to the project. Additionally, plaintiff could not occupy the property until the repairs listed in the accompanying "Specification of Repairs" were completed and the property had been inspected and deemed habitable by the HUD consultant. Defendant MQ Quality Building & Maintenance LLC (hereinafter defendant),[FN1] through its member, Melvin Quinones, submitted a proposal to complete the work outlined in the specification, and was approved for same.[FN2] Thereafter, plaintiff and defendant executed a homeowner-contractor document which articulated, as relevant here, the payment procedure, including final payment and walk-through inspection of the property. Disbursement of payments was to be accomplished in five draws. The parties submitted four draw requests without incident, the payments were released via a two-party check issued to plaintiff and defendant, and defendant duly received payment.
In November 2020, defendant submitted the final draw request and, pursuant to the terms of the contract, sought a final walk-through with plaintiff and the HUD consultant. This did not occur. Instead, plaintiff and the HUD consultant did the final walk-through without defendant. While initially the property did not pass inspection, it subsequently did, and the lender paid the fifth draw via a two-party check. However, plaintiff, citing issues with the work performed, refused payment to defendant.[FN3] In 2021, plaintiff commenced this action alleging that defendant breached the contract by way of defective or faulty work, additional work agreed to by the parties was not completed, that defendant failed to reimburse her for the cost of materials she had purchased for the project and expenses incurred by her as a result of having to repair defendant's defective work. Defendant asserted counterclaims for, among other things, breach of contract and unjust enrichment. Following a bench trial, Supreme Court awarded defendant the entirety of the final draw payment and an additional $12,500 for its unjust enrichment claim. Lastly, the court awarded plaintiff $8,500 for materials purchased by her for which she had not received reimbursement. Plaintiff appeals.
"When reviewing a nonjury verdict, we independently review the probative weight of the evidence, together with the reasonable inferences that may be drawn therefrom, and grant the judgment warranted [*2]by the record while according due deference to the trial court's factual findings and credibility determinations" (Schott v Lucatelli, 239 AD3d 1125, 1126 [3d Dept 2025] [internal quotation marks and citations omitted]; see Ampower-US, LLC v WEG Transformers USA, LLC, 214 AD3d 1129, 1130 [3d Dept 2023]). "A cause of action for breach of contract requires that the plaintiff show the existence of a contract, the performance of [his or her] obligations under the contract, the failure of the defendant to perform its obligations and damages resulting from the defendant's breach. It is well settled that a contractual agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms" (McCarthy Concrete, Inc. v Banton Constr. Co., 203 AD3d 1496, 1499 [3d Dept 2022] [internal quotation marks, brackets and citations omitted], lv denied 38 NY3d 913 [2022]; see Cobleskill Stone Prods., Inc. v Merchants Natl. Bonding, Inc., 223 AD3d 1021, 1023 [3d Dept 2024]).
Plaintiff contends that Supreme Court erred in its award of damages to defendant and its failure to award damages to her for repairs necessitated due to defendant's poor workmanship. As relevant here, the contract between plaintiff and defendant sets forth the necessary steps to obtain payment. The process for each progress payment consists of defendant notifying plaintiff that it is requesting payment, plaintiff in turn notifying defendant of any concerns, the parties then submit the request to the lender, the HUD consultant inspects the work and, provided it is satisfactory, the lender then issues a two-party check made payable to plaintiff and defendant. The payment shall be for 90% of the requested payment, while 10% shall be retained as a contingency fund to cover work not performed in accordance with the contract documents, defective work not corrected, or defendant's failure to pay subcontractors.[FN4] As for the final payment, defendant is to contact plaintiff, plaintiff and defendant are required to do a final inspection and plaintiff is to provide a written punch list of any incomplete or defective items. When all work is complete, defendant is to make a request for payment in accordance with the progress payment process noted above. The contract also includes a warranty provision wherein plaintiff has one year to notify defendant of any defective work, which defendant would be required to promptly correct at its expense. The evidence demonstrates that defendant attempted to comply with the contract in submitting his request for final payment and attempting to arrange a final inspection with plaintiff. However, instead of meeting with defendant, plaintiff unilaterally had the work inspected by the HUD consultant, and, after expending the sum of $1,098.50 to remedy defendant's deficient work, the work was approved and the lender sent a two-party check to plaintiff, which she retained, did not cash, nor did she remit any monies to defendant. [*3]Upon our independent review of the evidence adduced at trial, we agree with Supreme Court that defendant was entitled to the final draw. Further, as plaintiff did not comply with the terms of the contract, including inspecting the final work with defendant, providing a punch list and complying with the warranty provision, and, instead, hired third parties to make repairs, she was not entitled to damages (see Harris v Reagan, 221 AD3d 1069, 1073 [3d Dept 2023]; LaPenna Contr., Ltd. v Mullen, 187 AD3d 1451, 1453 [3d Dept 2020]).
We agree with plaintiff, however, that Supreme Court erred in awarding defendant $12,500 in unjust enrichment. "An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim" (Corsello v Verizon N.Y., Inc., 18 NY3d 777, 790 [2012] [citations omitted]; accord Doller v Prescott, 167 AD3d 1298, 1301 [3d Dept 2018]). Here, a review of defendant's answer and counterclaims demonstrates that its second counterclaim for unjust enrichment simply mimics the first counterclaim. Moreover, even if we were to conclude differently, this claim must fail for an utter lack of proof. In support of this claim, defendant's member, who performed the work, did not testify specifically as to what work was performed outside of the FHA 203(k) contract, he did not provide a detailed description of the tasks that were performed or how he calculated the amount sought including a delineation of labor and materials. Instead, he relied on his invoice, which had been admitted into evidence. However, the invoice is illegible, vague and does not contain a detailed description of the tasks performed, or a breakdown of costs between labor and materials (see Jaeger v Bellavia, 172 AD3d 1501, 1502 [3d Dept 2019]; Davis v CEC, Inc., 135 AD3d 1049, 1051 [3d Dept 2016], lv denied 27 NY3d 904 [2016]). Plaintiff's remaining contentions, to the extent not expressly addressed herein, have been examined and found to lack merit.
Aarons, J.P., Ceresia, Fisher and McShan, JJ., concur.
ORDERED that the judgment is modified, on the law, without costs, by reducing the damages awarded to defendant by $12,500, and, as so modified, affirmed.

Footnotes

Footnote 1: Although the complaint named defendant as Quality Building & Maintenance LLC, at trial defendant's counsel informed Supreme Court that the entity's proper name is MQ Quality Building & Maintenance, and no one has disputed that.

Footnote 2: At trial, plaintiff stipulated to withdraw the action against Melvin Quinones individually.

Footnote 3: It is undisputed that plaintiff did not cash the check.

Footnote 4: This fund, if unused, will be remitted to defendant simultaneously with the final payment.